UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF GEORGIA

SAVANNAH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | Case No. CR406-258 |
| ) | |
| YUSEF L. JACKSON, ) | |
| ) | |
| Defendant. ) | |

### REPORT AND RECOMMENDATION

Defendant has filed a motion to suppress all evidence seized following the stop of his vehicle on August 8, 2006. Doc. 9. The Court held an evidentiary hearing on this matter on November 3, 2006, at which time the government offered testimony from Officers Rufus Brown and Claude Debnam, both of the Savannah-Chatham Metropolitan Police Department. For the reasons that follow, the motion to suppress should be DENIED.

### I.   BACKGROUND

At approximately 4:00 p.m. on the afternoon of August 8, 2006, while he and another officer were interviewing some individuals near E. 36th

Street and Atlantic Avenue in Savannah,[1] Officer Brown observed a green Mercury Grand Marquis as it passed him going eastbound at a speed of approximately 25 miles per hour. Brown, who was standing in the street near the passing vehicle, had an unobstructed view of the driver and saw that he was not wearing his seatbelt. He also recognized the driver as defendant Jackson, whom he knew from previous encounters in that neighborhood and whose picture had recently been posted at his precinct as an individual wanted for questioning in connection with a homicide. Gov't Ex. 1.

Officer Brown entered his patrol vehicle and began to follow defendant, eventually conducting a traffic stop near the intersection of 33rd Street and Waters Avenue. Approaching the vehicle with caution,[2] Officer Brown noticed that defendant's seatbelt was still unbuckled. The officer advised defendant that he had been stopped for not wearing his seatbelt and had defendant produce his drivers license and registration. When back-up

---

[1] The intersection is in an area where a large quantity of drug sales are known to occur.

[2] Officer Brown, who had notified dispatch that he was stopping a person wanted for questioning in a homicide investigation, carefully positioned himself to the side of defendant's vehicle because he viewed defendant as a potential threat to his safety.

2

arrived, Officer Brown directed defendant to exit his vehicle. At this point Officer Debnam escorted defendant to the rear of the vehicle, directed him to place his hands on the trunk, and informed him that he was going to perform a "Terry frisk." Although defendant denied having anything in his pockets, during the pat-down Officer Debnam felt an elongated plastic item in defendant's right pocket and asked what it was. When defendant reached for his pocket in an apparent attempt to remove its contents, Debnam placed his hand in defendant's pocket and removed a plastic bag containing marijuana. Officers then performed a search of the vehicle and discovered a firearm under the driver's seat.

## II.   ANALYSIS

Defendant argues that the stop was "pretextual" and therefore violative of the Fourth Amendment guarantee against unreasonable searches and seizures. Doc. 10. Relying on U.S. v. Valdez, 931 F.2d 1448 (11th Cir. 1991), defendant contends that Officer Brown's true purpose for stopping him was because he recognized defendant from a "wanted" poster, not because Brown was interested in enforcing the traffic laws. Id.

Defendant argues that a reasonable officer would not have stopped him in the absence of an illegitimate motive, Officer Brown's stop of defendant was therefore illegal, and the evidence seized as a result of the stop should be suppressed as fruit of the poisonous tree. Id.

Defendant's argument rests upon a legal theory that has been squarely rejected by the Supreme Court. "As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Whren v. United States, 517 U.S. 806, 809 (1996). The existence of probable cause depends purely on the objective facts available to the officer. "Subjective intentions play no role in ordinary, probable-cause Fourth Amendment analysis." Id. at 813. For this reason, the Supreme Court has rejected the notion that a traffic stop based on probable cause is constitutionally permissible only if a reasonable officer would have made the stop solely for the purpose of enforcing the traffic laws. Id. at 813-15; see Riley v. City of Montgomery, 104 F.3d 1247, 1252 (11th Cir. 1997) (holding that the constitutional reasonableness of a traffic stop is determined irrespective of the intent of the individual officer or a theoretical "reasonable officer"). Therefore, "a police officer may stop a

vehicle '[w]hen there is . . . probable cause to believe the driver is violating any one of a multitude of applicable traffic and equipment regulations' relating to the operation of motor vehicles." United States v. Strickland, 902 F.2d 937, 940 (11th Cir. 1990) (quoting Delaware v. Prouse, 440 U.S. 668 (1979)).

Officer Brown testified that he stopped defendant based on his personal observation that defendant was not wearing his seatbelt, a violation of Georgia law. See O.C.G.A. § 40-8-76.1 (requiring all individuals in the front seat of a passenger car to wear seat belts). This observation furnished legitimate grounds to initiate the traffic stop. As Officer Brown had probable cause to believe a traffic violation had occurred, the stop of defendant's vehicle was entirely proper, and the fact that the officer had another, ulterior purpose for the stop is simply irrelevant to the Fourth Amendment inquiry. See United States v. Maxwell, 141 Fed. Appx. 878, 881 (11th Cir. 2005) (officer responding to a "be on the lookout call" who had observed what he thought was a seatbelt violation had probable cause to effectuate traffic stop).

Defendant contends that the Court should not credit Officer Brown's testimony because Brown would not have had an opportunity to observe that defendant was not wearing his seatbelt, since the officer was watching for oncoming traffic and interviewing someone at the intersection when defendant passed him. Doc. 28. Defendant also states that Officer Brown could not possibly have been three to four feet away from defendant's car, as the officer testified, because this would have placed the officer in the middle of the street, instead of in the middle of the westbound lane, where Officer Brown stated he was standing. Id. Finally, defendant argues that Officer Brown had an interest in stopping a person wanted for questioning, and that his "motive goes against his credibility." Id.

The Court credits the officer's testimony. While Officer Brown and his partner were engaged in interviewing other individuals, Brown was naturally aware of his surroundings (particularly in a high crime area) and would likely have paid attention to oncoming traffic, as he was standing partially in the street at the time. Officer Brown testified that the afternoon was clear and his view of defendant was unobstructed; regardless of whether Officer Brown was in the middle of the street or in the middle

of one of the lanes, he was clearly close enough to see that defendant was not wearing a seatbelt. Although it is reasonable to conclude that Officer Brown had an interest in speaking with an individual wanted for questioning in connection with a homicide, this interest does not require the inference that Brown fabricated his testimony or that defendant was in fact wearing his seat belt. As Officer Brown had probable cause to stop defendant's vehicle for a traffic violation, the stop violated none of defendant's constitutional rights.

Defendant also contends that Officer Debnam did not have reason to believe that defendant was armed, that the Terry frisk Debnam conducted was illegal, and that the evidence seized as a result of the frisk should be suppressed. Doc. 28. The facts do not support this contention. Whenever an individual has been lawfully seized by the police, whether pursuant to a brief, warrantless investigatory stop under Terry v. Ohio, 392 U.S. 1, 30 (1968), or (as here) for purposes of a traffic stop, he may be subjected to a frisk where officers reasonably believe that he poses a danger to the officers or others nearby. Id. at 29; United States v. Purcell, 236 F.3d 1274, 1277 (11th Cir. 2001) (in routine traffic stops, which are limited seizures

analyzed under Terry standards, officers may take reasonable steps to protect their safety, including conducting a protective search of the driver). A stop and a frisk are "separate activities which serve distinct purposes and require distinct justifications." United States v. Bonds, 829 F.2d 1072, 1074 (11th Cir. 1987) (noting that "a stop serves to investigate crime, while a frisk serves to prevent injury."). Because a frisk is justified by a need to protect officer safety, a frisk "does not always result from, nor is it necessarily a part of, any focused investigation of the individual." Id. (upholding the frisk of an individual who arrived at an apartment while officers were executing a search warrant even though officers had neither probable cause nor reasonable suspicion to detain the individual). "Once an officer has legitimately stopped an individual, the officer can frisk the individual so long as 'a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.'" United States v. Hunter, 291 F.3d 1302, 1306 (11th Cir. 2002) (quoting Terry, 392 U.S. at 27).

Officer Brown recognized defendant as an individual wanted for questioning regarding a violent crime, and he therefore quite reasonably

8

called for back-up before he stopped defendant for a traffic violation. Officer Debnam also recognized defendant's name and knew from the "wanted" poster that defendant was sought for questioning in connection with a homicide. Moreover, Debnam noticed that defendant's eyes were moving as if he were looking for an escape route and that he was sweating profusely, in a manner inconsistent with the temperature and defendant's lack of exertion. Under these circumstances, Debnam was justified in conducting a Terry frisk for the safety of himself and the other officers. See Pennsylvania v. Mimms, 434 U.S. 106, 112 (1977). Therefore, the evidence found during the course of that frisk was lawfully discovered.

## III. CONCLUSION

The evidence establishes that Officer Brown's initial traffic stop of defendant was lawful since Brown reasonably believed that defendant was operating his vehicle in violation of Georgia law. During that stop, Officer Debnam performed a Terry frisk of defendant based on his reasonable suspicion that defendant posed a threat to officer safety. The evidence discovered as a result of the stop and frisk is not fruit of the poisonous tree

as defendant contends. Defendant's motion to suppress should therefore be DENIED.

SO REPORTED AND RECOMMENDED this 13th day of November, 2006.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA